# NAPIER *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA.

# CHICAGO & NORTHWESTERN RAILROAD COMPANY *v.* RAILROAD COMMISSION OF WISCONSIN.

# CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY *v.* RAILROAD COMMISSION OF WISCONSIN.

ERROR TO THE SUPREME COURT OF WISCONSIN.

Nos. 87, 310, 311. Argued October 20, 21, 1926.—Decided November 29, 1926.

The Boiler Inspection Act, as amended, has so occupied the field of regulating locomotive equipment on interstate highways, that state legislation requiring cab curtains and automatic firebox doors, is

precluded and such matters are left to the regulatory power reposed by the Act in the Interstate Commerce Commission. P. 608.

2 F. (2d) 891, affirmed.

188 Wis. 232, reversed.

No. 87. APPEAL from a decree of the District Court (December 1924) enjoining the Attorney General of Georgia from enforcing a state law requiring the complaining carrier to equip the fireboxes of its locomotives with automatic doors.

Nos. 310, 311. ERROR to a judgment of the Supreme Court of Wisconsin, which affirmed judgments dismissing suits to set aside an order of the State Railroad Commission, based on statute, prescribing cab curtains.

*Mr. Thomas Stevenson,* with whom *Messrs. George M. Napier,* Attorney General of Georgia, and *Oscar J. Horn* were on the brief, for appellant in No. 87.

*Mr. Nye F. Morehouse,* with whom *Messrs. R. N. Van Doren, H. H. Field,* and *C. S. Jefferson* were on the brief, for plaintiffs in error in Nos. 310 and 311.

*Mr. Robert C. Alston,* with whom *Messrs. Blair Foster* and *Robert S. Parker* were on the brief, for appellee in No. 87.

*Mr. Robert M. Rieser,* with whom *Mr. Herman L. Ekern,* Attorney General of Wisconsin, was on the brief, for defendant in error in Nos. 310 and 311.

*Messrs. Andrew B. Dougherty,* Attorney General of Michigan, and *Fred L. Warner,* Assistant Attorney General, filed a brief, as *amici curiae* by special leave of Court, on behalf of the State of Michigan.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These cases require a determination of the scope and effect of the federal Locomotive Boiler Inspection Act.

February 17, 1911,.c. 103, 36 Stat. 913, as amended March 4, 1915, c. 169, 38 Stat. 1192, and June 7, 1924, c. 355, 43 Stat. 659. The main question, which is the same in the three cases, is one of statutory construction. It is whether the Boiler Inspection Act has occupied the field of regulating locomotive equipment used on a highway of interstate commerce, so as to preclude state legislation. Congress obviously has power to do so. Compare *Northern Pacific R. R. Co.* v. *Washington,* 222 U. S. 370; *Pennsylvania R. R. Co.* v. *Public Service Commission,* 250 U. S. 566; *Oregon-Washington R. R. & Nav. Co.* v. *Washington,* 270 U. S. 87.

No. 87 involves a Georgia statute which prescribes an automatic door to the firebox, Act of August 13, 1924, Georgia Laws, 1924, p. 173. That case is here on direct appeal from a final decree of the federal district court, entered December 23, 1924, granting the injunction. 2 Fed. (2d) 891. Nos. 310 and 311 involve a Wisconsin statute which prescribes a cab curtain, Wisconsin Statutes, § 1806a, c. 139, Laws of 1923. These cases are here on writs of error to the Supreme Court of that State, which affirmed a judgment denying the injunction. 188 Wis. 232. In Georgia, the details of the device were prescribed by the legislature. In Wisconsin, the specifications were prescribed by an order of the state Railroad Commission. In each case, an interstate carrier sought to enjoin state officials from enforcing, in respect to locomotives used on its lines, a state law which prohibits use within the State of locomotives not equipped with the device prescribed. Some of the engines were being operated entirely within the State, some across the state line to and from adjoining States. It is conceded that the federal Safety Appliance and Boiler Inspection Acts apply to a locomotive used on a highway of interstate commerce, even if it is operated wholly within one State and is not engaged in hauling interstate freight or passengers. *Southern Ry. Co.* v.

*United States,* 222 U. S. 20; *Texas & Pacific Ry.* v. *Rigsby,* 241 U. S. 33.

Prior to the passage of the Boiler Inspection Act, Congress had, by the Safety Appliance Act and several amendments, itself made requirements concerning the equipment of locomotives used in interstate commerce. It had required a power driving-wheel brake, automatic couplers, grabirons or handholds, drawbars, safety ash pans, and sill steps. Acts of March 2, 1893, c. 196, 27 Stat. 531; March 2, 1903, c. 976, 32 Stat. 943; May 30, 1908, c. 225, 35 Stat. 476; April 14, 1910, c. 160, 36 Stat. 298. Congress first conferred upon the Interstate Commerce Commission power in respect to locomotive equipment in 1911. The original Act applied only to the boiler. It is entitled: "An Act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers and appurtenances thereto." The provisions of that Act were extended in 1915 to "include the entire locomotive and tender and all parts and appurtenances thereof." In 1924, § 2 of the original Act was amended to read as follows:

"That it shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of this Act and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

Other sections confer upon Inspectors and the Commission power to prescribe requirements and establish rules

to secure compliance with the provisions of § 2. From time to time since the passage of the original Act, the Commission has required that locomotives used in interstate commerce be equipped with various devices.[1] But it has made no order requiring either a particular type of fire-box door or a cab curtain. Nor has Congress legislated specifically in respect to either device.

The Georgia Act provides that the "automatic door shall be so constructed and operated by steam, compressed air or electricity, as deemed best and most efficient by officers of such railroad. The device for operating such door shall be so constructed that it may be operated by the fireman of said engine by means of a push-button or other appliance located on the floor of the engine deck or floor of the tender . . . to enable the fireman while firing such engine by pressure with his feet to operate such door for firing of such engine." The automatic fire-door conserves the health of the fireman by protecting him from exposures to extremes of heat and cold while performing his duties; conserves his eyesight by reducing the amount and extent of exposure to the glare of the fire; protects the safety of the employees in the event of an explosion in the fire-box; and incidentally might affect the safety of the train, after such an explosion, in that employees, being safe, might be able to bring the train under control. The automatic fire-door would also serve to protect travellers upon highways

---

[1] Steam gauge (Rule 28); safety valves (Rule 34); water glass and gauge cocks (Rule 37); shutoff and drain cocks (Rule 38); shields on water and lubricator glasses (Rule 41); lamps in connection with water glasses (Rule 42); particular types of ash pans (Rule 105); "clear vision" windows in cabs (Rule 116); cylinder cocks (Rule 119); sanding apparatus (Rule 120); whistle (Rule 121); safety bars or chains (Rule 122b); chafing irons (Rule 123); headlights with designated intensity and devices (Rules 129, 131); classification lamps (Rule 130); cab lights (Rule 132); safety valve for oil supply pipe (Rule 154).

crossed by the railroad at grade. For the fireman is required to aid the engineer in keeping a lookout; and with use of the old type swinging door this is not continuously possible. The glare of the flame when the door is open practically blinds the fireman for a time.

The purpose of the cab curtain is to protect engineers and firemen from the weather during the winter season. The Act made it unlawful to use " between the fifteenth day of November and the first day of April of each year any locomotive engine not equipped with suitable and approved cab curtains. Such curtains shall be so constructed as to efficiently enclose the openings between the engine cab and the water tank or coal tender attached to such locomotive engine. The windows of the cab shall be properly and closely fitted and all openings for levers or pipes and all other openings whatsoever through which cold or drafts may bring discomfort to the occupants, shall be efficiently protected in such manner as may be required and according to plans approved by the Railroad Commission." Various types of cab curtains had been voluntarily installed by the carriers. But those installed by most of the carriers were such that snow entered the cabs in large quantities; that it saturated the clothing of engineers and firemen; and that the exposure caused great discomfort and danger of serious illness. The State Commission found that the plans for cab curtains submitted by the several carriers were, with one exception, not " fully suitable and effective for the protection of the health, comfort and welfare of the engine men "; and ordered particular requirements.

Each device was prescribed by the State primarily to promote the health and comfort of engineers and firemen. Each state requirement may be assumed to be a proper exercise of its police power, unless the measure violates the Commerce Clause. It may be assumed, also, that there is no physical conflict between the devices required

by the State and those specifically prescribed by Congress or the Interstate Commerce Commission;[2] and that the interference with commerce resulting from the state legislation would be incidental only. The intention of Congress to exclude States from exerting their police power must be clearly manifested, *Reid* v. *Colorado,* 187 U. S. 137, 148; *Savage* v. *Jones,* 225 U. S. 501, 533. Does the legislation of Congress manifest the intention to occupy the entire field of regulating locomotive equipment? Obviously it did not do so by the Safety Appliance Act, since its requirements are specific. It did not do so by the original Boiler Inspection Act; since its provisions were limited to the boiler. *Atlantic Coast Line R. R. Co.* v. *Georgia,* 234 U. S. 280. But the power delegated to the Commission by the Boiler Inspection Act as amended is a general one. It extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances.

The requirements here in question are, in their nature, within the scope of the authority delegated to the Commission. An automatic firedoor and an effective cab curtain may promote safety. Keeping firemen and engineers in good health, like preventing excessive fatigue through limiting the hours of service, clearly does so, although indirectly; and it may be found that to promote their comfort would likewise promote safety. It is argued that the authority delegated to the Commission does not extend to ordering the use or installation of equipment of any kind, *Baltimore & Ohio R. R. Co.* v. *Groeger,* 266 U. S. 521; and that Congress has definitely reserved that power to itself, *Interstate Commerce Commission* v. *Cin-*

___

[2] It is contended by the carriers that the order of the Wisconsin Commission is, in some minor respects, inconsistent with requirements prescribed, in other connections, by the Interstate Commerce Commission. For reasons to be stated, we have no occasion to examine into the alleged conflict.

*cinnati, New Orleans & Texas Pacific Ry. Co.*, 167 U. S. 479; *Atlantic Coast Line R. R. Co.* v. *Georgia*, 234 U. S. 280; *United States* v. *Pennsylvania R. R. Co.*, 242 U. S. 208. The question whether the Boiler Inspection Act confers upon the Interstate Commerce Commission power to specify the sort of equipment to be used on locomotives was left open in *Vandalia R. R. Co.* v. *Public Service Commission*, 242 U. S. 255. We think that power was conferred. The duty of the Commission is not merely to inspect. It is, also, to prescribe the rules and regulations by which fitness for service shall be determined. Unless these rules and regulations are complied with, the engine is not "in proper condition" for operation. Thus the Commission sets the standard. By setting the standard it imposes requirements. The power to require specific devices was exercised before the amendment of 1915, and has been extensively exercised since.

The argument mainly urged by the States in support of the claim that Congress has not occupied the entire field, is that the federal and the state laws are aimed at distinct and different evils; that the federal regulation endeavors solely to prevent accidental injury in the operation of trains, whereas the state regulation endeavors to prevent sickness and disease due to excessive and unnecessary exposure; and that whether Congress has entered a field must be determined by the object sought through the legislation, rather than the physical elements affected by it. Did Congress intend that there might still be state regulation of locomotives, if the measure was directed primarily to the promotion of health and comfort and affected safety, if at all, only incidentally?

The federal and the state statutes are directed to the same subject—the equipment of locomotives. They operate upon the same object. It is suggested that the power delegated to the Commission has been exerted only in respect to minor changes or additions. But this, if true,

is not of legal significance. It is also urged that, even if the Commission has power to prescribe an automatic fire-box door and a cab curtain, it has not done so; and that it has made no other requirement inconsistent with the state legislation. This, also, if true, is without legal significance. The fact that the Commission has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the Act delegating the power. We hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field. The broad scope of the authority conferred upon the Commission leads to that conclusion. Because the standard set by the Commission must prevail, requirements by the States are precluded, however commendable or however different their purpose. Compare *Louisville & Nashville R. Co. v. State,* 16 Ala. App. 199; *Whish v. Public Service Commission,* 205 App. Div. 756; 240 N. Y. 677; *Staten Island Rapid Transit Co. v. Public Service Commission,* 16 Fed. (2d) 313.

If the protection now afforded by the Commission's rules is deemed inadequate, application for relief must be made to it. The Commission's power is ample. Obviously, the rules to be prescribed for this purpose need not be uniform throughout the United States; or at all seasons; or for all classes of service.

*In No. 87, decree affirmed.*

*In Nos. 310 and 311, judgment reversed.*