**CXST, INC., a Virginia Corporation, Plaintiff,**

v.

**James J. PITZ, Director of the Department of Transportation of the State of Michigan, Norma J. Fleming, Administrator of the Railroad Safety and Tariffs Division of the Department of Transportation of the State of Michigan, and the Department of Transportation of the State of Michigan, Defendants,**

**and**

**The United Transportation Union, Intervening Defendant.**

No. L 88–17 CA 5.

United States District Court, W.D. Michigan, S.D.

May 13, 1988.

Patrick E. Hackett, Carol Hackett–Garagiola, Bloomfield Hills, Mich., Sally J. Kircher, Jacksonville, Fla., for plaintiff.

Frank J. Kelley, Atty. Gen., State of Mich. by Susan Peck Iannotti, William Reid Ralls, Lansing, Mich., for defendants.

## OPINION

ROBERT HOLMES BELL, District Judge.

Before this Court is plaintiff's motion for summary judgment on its complaint. In its complaint plaintiff seeks a judgment declaring that the Michigan Department of Transportation (MDOT) Rule 460.1473(a) is preempted by the Locomotive Boiler Inspection Act (LBIA), 45 U.S.C. § 22 *et seq.*, and the Federal Railroad Safety Act (FRSA), 45 U.S.C. § 421 *et seq.* and an injunction prohibiting defendant MDOT from enforcing Rule 460.1473(a) against CSXT.

## BACKGROUND

CSXT is a railway company operating in Canada and twenty states including Michigan. United Transportation Union (UTU), intervening defendant, represents railroad workers and complained to MDOT that CSXT violated Rule 460.1473(a) by failing to provide commodes on locomotives operating in Michigan. MDOT scheduled a hearing on the complaint before an administrative law judge for February 10, 1988. On January 23, 1988, CSXT filed this law-suit for declaratory and injunctive relief. On January 27, 1988, an MDOT administrative law judge denied CSXT's motion to stay state administrative proceedings pending this Court's determination of CSXT's claims that Rule 460.1473(a) was preempted. On February 8, 1988, this Court granted CSXT's motion for a preliminary injunction restraining defendants from enforcing Rule 460.1473(a) until August 4, 1988, or until this Court's ruling on CSXT's motion for summary judgment.

Of CSXT's 3,000 locomotives approximately 1,000 do not have commodes. Some unequipped locomotives operate in Michigan. However, CSXT indicates that it plans to equip all of its locomotives with commodes within three years.

The disputed rule textually requires "adequate toilet facilities," but does not specifically require equipping each locomotive with an individual commode. Nevertheless, MDOT has argued its position assuming that enforcement of Rule 460.1473(a) would require equipping locomotives with commodes. The administrative law judge's analysis presumes the same. Although UTU does not concur with MDOT that the rule requires a commode on every locomotive, for purposes of its preemption analysis this Court assumes that application of the rule would require installation of a commode on each CSXT locomotive operating in Michigan. Rule 460.1473(a) provides:

Running Facilities

Rule 3. (1) Adequate toilet facilities shall be made available for trainmen, enginemen and yardmen, after hearing thereon and order by the commission, which toilet facilities shall be kept in reasonably clean and sanitary condition.

## ANALYSIS

The issue before this Court is whether Rule 460.1473(a) is preempted by the Boiler Inspection Act (LBIA), 45 U.S.C. § 22 *et seq.*, and the Federal Railroad Safety Act (FRSA), 45 U.S.C. § 421 *et seq.*

The doctrine of preemption is based upon the supremacy clause of the Constitution,

art. VI, cl. 2, which mandates that federal law overrides any conflicting state regulation. Moreover, when exercising one of its plenary powers, Congress can occupy an entire regulable field with federal law and effectively prohibit any parallel state legislation. *Missouri–Pacific Railroad Company v. Porter,* 273 U.S. 341, 47 S.Ct. 383, 71 L.Ed. 672 (1927). Congress can clearly manifest its intention to preempt state law by explicitly stating its intent to totally occupy a field. Or in lieu of any clear manifestation courts will discern the clarity of Congress' intent to preempt state regulation by the pervasiveness of the federal regulatory scheme, the need for national uniformity, or the potential for conflict between administering federal and state programs. *Florida Lime and Avacado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), *Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956).

*Locomotive Boiler Inspection Act*

CSXT argues that the LBIA preempts Rule 460.1473(a) because in the LBIA Congress intended to occupy the entire field of locomotive equipment regulation as determined by the Supreme Court in *Napier v. Atlantic Coast Line Railroad,* 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926). Defendants and amicus respond that *Napier* is no longer good law because the FRSA has impliedly superseded the LBIA.

The LBIA, 45 U.S.C. § 23, provides:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may prescribed in the rules and regulations hereinafter provided for.

In *Napier* the Court held that LBIA preempted a Georgia state statute requiring automatic doors on locomotive fire-boxes and a Wisconsin statute requiring locomotive cab curtains. The Court recognized that the LBIA comprehensively empowered the Interstate Commerce Commission [authority now resident with the Secretary of Transportation and the Federal Railroad Administration, 49 U.S.C.App. §§ 103 and 1655(e)(1)(E) ] to promulgate regulations regarding material, construction, and design of locomotives and all their appurtenances in order to enforce compliance with the LBIA. *Napier,* at 609, 47 S.Ct. at 208. The Court also noted that no federal regulation existed as to the specific items, fire-box doors and cab curtains, that the state regulation required. However, the Court determined that Congress intended the LBIA to occupy the entire field of locomotive equipment and consequently the LBIA preempted the state legislation, *Napier,* at 612–613, 47 S.Ct. at 209–10.

Even though *Napier* was decided in 1926, contemporary federal courts continue to accept it as binding precedent recognizing that Congress intended that the LBIA would occupy totally the field of locomotive equipment and preempt any state regulation of it. Further, this Court is unaware of any federal court authority overruling *Napier. Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149 (9th Cir.1983), *Missouri Pacific Railroad Co. v. Railroad Commission of Texas,* 833 F.2d 570 (5th Cir.1987), *Consolidated Rail Corp. v. Pennsylvania Public Utility,* 536 F.Supp. 653 (E.D.Pa.1982), *aff'd mem.,* 696 F.2d 981 (3rd Cir.1982), *aff'd mem.,* 461 U.S. 912, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983). Moreover, the various authorities proffered by defendants are neither binding precedent on this Court nor reasonably persuasive.

This Court is similarly convinced that in the LBIA Congress clearly manifested its intent to fully occupy the field of locomotive equipment regulation by employing language providing for "rules and regulations" covering a "locomotive, its boiler,

tender, and all parts and appurtenances thereof."

Defendants contend that the FRSA, passed subsequently to the LBIA, indicates an unambiguous change in Congress' alleged intent to occupy the field of locomotive equipment regulation. Defendants refer to the legislative history of the FRSA identifying its primary purpose to "promote safety in all areas of railroad operations" and calling "for broadscale Federal legislation with provisions for active State participation to assure a much higher degree of railroad safety in the years ahead." H.R.Rep. No. 1194, 91st Cong., 2d Sess. 19–20 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4104–4105. (Report 1194, with cites to USSCAN).

CSXT, however, notes that Report 1194, at 4113–4114, underscores the continuing effect of existing federal railroad safety law when commenting on § 202 of the FRSA:

> The committee added the words "supplementing provisions of law and regulations in effect on the date of enactment of this title" to the Secretary's rulemaking authority to make clear that this grant of jurisdiction does not replace the existing rail safety statutes and implementing regulations transferred to the Department of Transportation.... It is the committee's intent that those existing statutes will continue to be enforced and administered by the Department in their respective area and that the new authority will be implemented with respect to those areas of rail safety not now subject to Federal jurisdiction. In other words, it is the intent of the committee that the existing statutes continue to be administered and enforced as if this legislation had not been enacted.

Since the LBIA was in effect on the date of the FRSA's enactment, this legislative history indicates that Congress did not intend that the FRSA would supersede the LBIA.

This Court acknowledges that in the LBIA Congress intended to occupy the field of locomotive equipment regulation, as recognized in *Napier,* and determines that the FRSA did not impliedly modify the LBIA. Consequently, this Court determines that the LBIA preempts Rule 460.-1473(a) insofar as it may be construed to require commodes on locomotives operating in Michigan.

### Federal Railroad Safety Act

CSXT claims that the FRSA preempts Rule 460.1473(a) because the rule attempts to regulate the same subject matter as the FRSA, does not qualify under the FRSA's provision for limited state regulation. Defendants and amicus argue that the FRSA specifically provides for state regulation such as Rule 460.1472(a).

The FRSA, § 205, 45 U.S.C. § 434, provides:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

This Court recognizes that Congress prefaces this section with its policy declaration that railroad safety laws "shall be nationally uniform to the extent practicable." This Court further notes that Congress provides for individual state regulations relating to railroad safety until a federal regulation is promulgated covering the "subject matter" of the state regulation. CSXT asserts that "subject matter" should be construed as regulable categories, such as, locomotive equipment. Defendants and amicus maintain that "subject matter" should be narrowly construed to mean particular and specific items, such as, sanitary facilities on

locomotives. The pivotal issue is the scope of the phrase "subject matter."

This Court acknowledges Congress' explicit statement that railroad safety laws should be as nationally uniform as practicable. This reasonably suggests that the "subject matter" under state regulation should be circumscribed and distinct from the "subject matter" under federal regulation. Nevertheless, Congress does provide for additional or more stringent state regulation of a federally regulated "subject matter" in order to eliminate or reduce an "essentially local safety hazard." But that is not the present case as the parties themselves recognize.

Congress' mandate of national uniformity also logically implies a broad construction of the term "subject matter" as a category, class, or group, rather than a specific, particular, or individual item. If "subject matter" were construed narrowly as item specific, then states would be free to interstitially impose a myriad of gap filling safety regulations in areas where Congress may have regulated comprehensively, although not exhaustively. This approach would promote piecemeal, ad hoc, and fragmentary regulation, and, thereby, effectively destroy national uniformity.

This Court acknowledges and endorses the rationale of *Norfolk and Western Ry. Co. v. Burns*, 587 F.Supp. 161 (E.D.Mich. 1984). In *Burns* the court determined that the FRSA preempted state regulation of railroad walkways because walkways comprised an unspecified part of the general track structure, which was a federally regulated "subject matter." The *Burns* court recognized the potential "subject matter" conflict arising from Congress' intent to provide uniform railway safety regulations and the states' limited right to regulate for safety:

> To the degree that this pronouncement suggests federal preemption, it is equally important to note that the matter of permissible state regulation is specifically addressed. First, it is clear that there can be no preemption unless the Secretary has actually adopted a railroad safety standard. *That does not necessarily mean that the standard adopted must detail every conceivable item that might be contemplated thereby;* but, at least, there has to be some action generally indicating that the Secretary is acting pursuant to the powers vested in him by Congress. (emphasis added)

*Burns,* at 164.

In the instant case, federal regulations exist comprehensively governing locomotive design and equipment. Railroad locomotive safety standards are extensively specified in 49 C.F.R. §§ 229.1–229.141 (1987) detailing numerous individual items of locomotive equipment. This Court recognizes the expansive range and comprehensive scope of these safety standards for locomotive design and equipment. This Court also acknowledges that locomotive commodes do not appear as specific regulated items. Nevertheless, this Court determines that the phrase, "subject matter," is most reasonably construed broadly as a category, group, or class because of the comprehensive scope and character of existing federal locomotive safety regulations. Even though these comprehensive federal regulations do not exhaustively "detail every conceivable item that might be contemplated," they, in fact, define a category of "subject matter" by their scope and range of which this Court determines that locomotive commodes are part and parcel. Therefore, the existing comprehensive federal regulation of locomotive equipment, which this Court recognizes as constituting a category, class, group, or field of "subject matter" under the FRSA, § 205, preempts state regulation requiring locomotive commodes.

## CONCLUSION

Accordingly, this Court determines that the LBIA and the FRSA each preempt Rule 460.1473(a) insofar as it is construed to require commodes on locomotives operating in Michigan.