MOSK, J.
I dissent.
This action involves claims by former railroad employees and their survivors against General Motors Corporation for asbestos-related injuries suffered as a result of exposure to asbestos materials in locomotives manufactured by General Motors. The majority conclude that General Motors, which until 1984 manufactured locomotives using asbestos materials for insulation, is shielded against common law damage claims by former railroad employees because such claims are preempted by the Locomotive Boiler Inspection Act (BIA or the Act), title 49 of the United States Code, section 20701 et seq.
I disagree. It is true that Napier v. Atlantic Coast Line (1926) 272 U.S. 605, 607 [47 S.Ct. 207, 207-208, 71 L.Ed. 432], on which the majority principally rely, held that the BIA was intended to occupy the field of regulating locomotive equipment used on a highway of interstate commerce. I am not persuaded, however, that the “field” referred to in Napier extends to the claims at issue in this case.
*485 Under the majority’s result, employees (as well as passengers and bystanders) are entitled to no remedy against a manufacturer for their injuries caused by any flaws in its design or manufacture of a product, no matter how egregious. This is so even when, as here, the state damage actions do not conflict with any federal regulation or with the goals of the BIA. I doubt that such absolute immunity for manufacturers is consistent with the congressional intent underlying the BIA, which was enacted to increase safety for workers and passengers on our nation’s railroads.
I
The question presented is whether the BIA preempts state common law tort claims against General Motors for injuries caused by defects in its products. Contrary to the majority’s assertion, the point is not well settled. Napier does not address it; nor has the United States Supreme Court addressed it in any subsequent decision. We must begin, therefore, with the assumption that preemption is disfavored and we should be reluctant to find it.
Cipollone v. Liggett Group, Inc. (1992) 505 U.S. 504, 516 [112 S.Ct. 2608, 2617, 120 L.Ed.2d 407], summarizes the law of preemption as follows. “Article VI of the Constitution provides that the laws of the United States ‘shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.’ [(U.S. Const., art. VI, cl. 2).] Thus, since our decision in McCulloch v. Maryland [(1819) 17 U.S. (4 Wheat.) 316, 427 [4 L.Ed. 579, 606-607]], it has been settled that state law that conflicts with federal law is ‘without effect.’ [Citation.] Consideration of issues arising under the Supremacy Clause ‘start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.’ [Citation.] Accordingly, ‘ “[t]he purpose of Congress is the ultimate touchstone” ’ of pre-emption analysis. [Citation.] [¶] . . . In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law [citation], or if federal law so thoroughly occupies a legislative field ‘ “as to make reasonable the inference that Congress left no room for the States to supplement it.” ’ ”
In CSX Transp., Inc. v. Easterwood (1993) 507 U.S. 658, 668 [113 S.Ct. 1732, 1739-1740, 123 L.Ed.2d 387], involving preemption of common law tort claims involving railroad safety, the United States Supreme Court referred to the “presumption against pre-emption.” “In the interest of avoiding unintended encroachment on the authority of the States ... a court interpreting a federal statute pertaining to a subject traditionally governed by *486 state law will be reluctant to find pre-emption.” (Id. at pp. 663-664 [113 S.Ct. at p. 1737].) Thus, we should be particularly reluctant to find preemption when, as here, the federal law at issue involves health and safety.
II
The language of the BIA indicates no clear and manifest purpose to preempt common law tort actions by railroad employees against locomotive manufacturers. On its face, the Act applies simply to railroad carriers. The phrase “railroad carriers” appears repeatedly. (See, e.g., 49 U.S.C. § 20701 [“railroad carrier” is required to use inspected, safe equipment]; id., § 20702 [Secretary of Transportation must ensure that every “railroad carrier” inspect its equipment]; id., § 20703 [accident reporting requirements for “railroad carrier”].) The text of the statute says nothing about railroad manufacturers.
The legislative history supports the conclusion that Congress intended the BIA to apply only to railroad carriers. Enacted as an amendment to the Federal Employers’ Liability Act (FELA; 45 U.S.C. § 51 et seq.), which provides the exclusive remedy for recovery of damages by a railroad employee against a railroad carrier, the BIA was aimed at protecting employees and the traveling public from defective locomotive equipment. (Urie v. Thompson (1949) 337 U.S. 163, 188, 190-191 [69 S.Ct. 1018, 1033-1034, 1034-1035, 93 L.Ed. 1282, 11 A.L.R.2d 252]; see also Viad Corp. v. Superior Court (1997) 55 Cal.App.4th 330, 334 [64 Cal.Rptr.2d 136].) It imposes on interstate railroads an absolute duty to provide safe equipment, and subjects railroads to FELA suits by their employees for BIA violations. (Urie v. Thompson, supra, 337 U.S. at p. 189 [69 S.Ct. at p. 1034].) Although the original legislation contained a penalty provision that would have applied to “any common carrier or any seller of a locomotive boiler” (Sen. No. 236, 61st Cong., 1st Sess., p. 4 (1910), italics added), it was amended to exclude sellers. As enacted, it expressly applied to any common carrier or carriers (defined as a railroad) and its officers, agents, and employees, engaged in transportation by railroad. The decision to exclude “locomotive sellers” from the ambit of the BIA strongly suggests that Congress did not intend to provide nonrailroads, such as General Motors in this case, with greater preemptive immunity from state tort claims than that enjoyed by the railroads.[1]
The overall structure of the BIA also supports the conclusion that it applies only to railroad carriers. As a federal district court recently explained: “[I]t is clear that the BIA as a whole establishes a regulatory *487 framework within which carriers and the Secretary of Transportation—but not railroad manufacturers—operate. Nothing about the structure of the BIA indicates that Congress intended to bring railroad manufacturers within its regulatory web, let alone to preclude state common law actions against railroad manufacturers. [¶] . . . The statute’s text does not mention railroad manufacturers, its structure does not invite reading them into it, and federalism and history counsel leaving them out.” (Lorincie v. Southeastern Pennsylvania Transp. Auth. (E.D.Pa. 1998) 34 F.Supp.2d 929, 934.)
The majority assert that the BIA “ ‘contains no evidence Congress assumed or intended state remedies for design defects would be preserved.’ ” (Maj. opn., ante, at pp. 479-480.) It is apparent, however, that Congress could not have assumed or intended that the BIA would preempt common law claims involving health and safety by railroad employees against manufacturers because such claims did not exist in 1911; a railroad employee had no right of action against a manufacturer under the then prevailing strict privity doctrine. Indeed, the doctrine of strict products liability was not established until the 1960’s. (See Greenman v. Yuba Power Products, Inc. (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; Vandermark v. Ford Motor Co. (1964) 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168].) In my view, the “field” referred to in Napier v. Atlantic Coast Line, supra, 272 U.S. 605, does not reasonably include tort liability against nonrailroad entities that was unknown at the time Congress enacted the BIA. (See Viad Corp. v. Superior Court, supra, 55 Cal.App.4th at pp. 338-339.)[2]
Nor am I persuaded that a more prescient Congress would have intended to grant manufacturers immunity from damage claims by railroad employees by preempting state law claims under circumstances where identical claims may subject the railroad carrier to FELA liability. Such a rule could result in the anomaly of imposing liability on a railroad carrier for an injury it did not cause, while blanketing the manufacturer with immunity from any liability for injuries caused by its defective products. (Cf. Ellison v. Shell Oil Co. (9th Cir. 1989) 882 F.2d 349 [railroad may maintain an indemnity action for injuries to employee caused by a defective railroad car].) It also appears unlikely that Congress intended to shield manufacturers from all liability for the injuries of passengers and bystanders, who are not entitled to bring claims under the FELA.
Recent preemption decisions by the United States Supreme Court also dictate a different result, instructing that common law tort claims for injury *488 are not automatically preempted even when federal legislation has been held generally to occupy the “field” in question. Rather, a defendant seeking immunity must establish that permitting such remedies would frustrate congressional objectives in enacting the legislation on which the claim of preemption is based. Thus, in Silkwood v. Kerr-McGee Corp. (1984) 464 U.S. 238 [104 S.Ct. 615, 78 L.Ed.2d 443], involving a common law tort action based on injuries from plutonium contamination, the United States Supreme Court rejected a claim that the action was preempted by the Atomic Energy Act (42 U.S.C. § 2011 et seq.) because the federal legislation occupied the entire field of nuclear safety concerns. The court held that the parameters of a preempted field “should not be judged on the basis that the Federal Government has so completely occupied the field of safety that state remedies are foreclosed but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law.” (464 U.S. at p. 256 [104 S.Ct. at p. 626].) It examined the legislative history of the Atomic Energy Act and determined that there was no indication of congressional intent to preclude state law remedies.
Similarly, Medtronic, Inc. v. Lohr (1996) 518 U.S. 470 [116 S.Ct. 2240, 135 L.Ed.2d 700] rejected a claim that the Medical Device Amendments of 1976 (21 U.S.C. § 360c et seq.) preempted state law on the safety and effectiveness of medical devices intended for human use. Emphasizing the presumption against preemption, the court looked at the structure and purpose of the statute. It found nothing in the text of the statute, which contained no provision regarding a right of action against manufacturers, and nothing in its legislative history suggesting a congressional intent to bar product liability actions. “The legal duty that is the predicate for the Lohr s’ negligent manufacturing claim is the general duty of every manufacturer to use due care to avoid foreseeable dangers in its products. . . . These state requirements . . . escape pre-emption, not because the source of the duty is a judge-made common-law rule, but rather because their generality leaves them outside the category of requirements that [the preemption statute] envisioned to be ‘with respect to’ specific devices such as pacemakers.” (518 U.S. at pp. 501-502 [116 S.Ct. at p. 2258].)
Under the tests applied by the United States Supreme Court in Silkwood and Medtronic, the BIA does not preempt plaintiffs’ claims against General Motors. As discussed, neither the text nor the legislative history of the Act permits the conclusion that Congress intended to restrict employees and others from obtaining a common law remedy for injuries caused by manufacturers’ defective products; such a remedy did not even exist at the time the BIA was enacted. More specifically, General Motors presented no *489 evidence of any BIA regulations concerning asbestos. According to the materials submitted by the parties, the use of asbestos in locomotives has never been and apparently never will be regulated. (Off. of Safety Assurance and Compliance, Rep. to Cong., Locomotive Crashworthiness and Cab Working Conditions (Sept. 1996), pp. 10-10 to 10-12.) Locomotive manufacturers freely made the decision to use asbestos materials; now those manufacturers, including General Motors, have ceased using asbestos and have adopted policies prohibiting its future use, presumably because of its toxicity. (Ibid.) The state law remedies at issue here pose no threat to federal objectives under the BIA, past, present, or future. Nor is there any irreconcilable conflict between federal and state standards with regard to asbestos use.
The majority rest their holding on the premise that allowing these plaintiffs a remedy against General Motors will undermine national uniformity with regard to railroad equipment. Unlike the majority, I doubt that promoting national uniformity—as opposed to safety—was the primary purpose of the BIA. But even if it were, I do not agree that regulatory uniformity will be impaired unless we insulate General Motors from damages for injuries caused by its defective products. The majority raise a false specter of railroads having to change equipment at state lines. As discussed, there has never been any form of federal regulation on the issue of asbestos use in locomotives that would contravene plaintiffs’ theory of recovery, nor is it plausible that any other state will require trains to install defective asbestos insulation on locomotives. Indeed, because of its well-known dangers, asbestos insulation is no longer used in the manufacture of locomotives.
III
The majority’s result will unfairly impair the ability of former railroad employees and their families to seek an adequate remedy for their asbestos-related injuries. I fail to see how that rationally advances any federal policy under the BIA. Because I discern no clear and manifest evidence of congressional purpose to preempt the claims raised herein, I would reverse the judgment of the Court of Appeal.
Appellants’ petition for a rehearing was denied April 12, 2000. Mosk, J., was of the opinion that the petition should be granted.

 Only in 1988 and 1992, after the locomotives at issue here were manufactured by General Motors, was the civil penalty provision of the BIA amended to refer to “any person,” defined as including any manufacturer of railroad equipment. (Former 45 U.S.C. § 34; Pub.L. No. 100-342, § 14(7) (June 22,1988), 102 Stat. 624; Pub.L. No. 102-365, § 9(a)(8) (Sept. 3,1991) 106 Stat. 972.)

 The strict privity doctrine required that only the immediate buyer of a product could recover for injuries caused by a defect. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 948, p. 332.) Thus, at the time the BIA was enacted, a railroad employee would have had no right of action against the manufacturer.