Thomas F. ATWELL, Jr., Executor of the Estate of Thomas F. Atwell, Deceased, Appellee

v.

JOHN CRANE, INC., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 23, 2009.
Filed Dec. 17, 2009.

Michael A. Pollard, Chicago, IL, and William R. Adams, Philadelphia, for appellant.

Robert E. Paul, Philadelphia, for appellee.

BEFORE: FREEDBERG, CLELAND and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 This is an appeal from the judgment of $150,000 in favor of Appellee/plaintiff below in an action based on claims of strict liability stemming from the death of Appellee's decedent from lung cancer. The question raised by Appellant is whether the litigation of state tort claims based on work related asbestos exposure is preempted by federal law where the employment, and thus the exposure, occurs in a railroad maintenance facility. We affirm.

¶ 2 From 1951 to the institution of suit in 2004, Appellee's decedent was exposed to asbestos-containing products manufactured by Appellant,[1] specifically gaskets,

1. Suit was instituted against multiple defendants, all of whom save Appellant settled or

packing, and pipe wrap, used by Appellee's decedent[2] in his work as a pipe fitter repairing locomotives first for Southern Railway, and then for Norfolk Southern Railway. In August of 2003, he was diagnosed with lung cancer, contracted as the result of his asbestos exposure, and died in July of 2006, prior to the reverse bifurcated trial which concluded with the judgment in favor of Appellee, the executor of the decedent's estate. This appeal followed.

¶ 3 Two claims are raised for this Court's review alleging that Appellant is entitled to judgment in its favor as Appellee's state tort claims are preempted by federal law occupying the field of railroad safety, and alternatively that Appellant is entitled to a judgment notwithstanding the verdict (JNOV) on its cross-claims against all codefendants.

¶ 4 The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the laws of the United States .... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. A federal statute to be examined for congressional intent to preempt can yield any of three types of preemption: (1) express preemption as contained in the specific language of the statute; (2) field preemption implicit in legislation so comprehensive as to occupy any given field to the exclusion of state law; and (3) conflict preemption where state law in conflict with federal law is precluded. *See Krentz v. Consolidated*

*Rail Corp.*, 589 Pa. 576, 910 A.2d 20, 32 (2006). "In the absence of express preemption ... the manifestation of Congressional intent to occupy a field must be unmistakable." *Norfolk & W.R. Co. v. P.U.C.*, 489 Pa. 109, 413 A.2d 1037, 1041 (1980). Moreover, "even if a federal law contains an express preemption clause, the inquiry continues as to the substance and the scope of Congress' displacement of the state law." *Dooner v. DiDonato*, 971 A.2d 1187, 1193 (Pa.2009) (citing *Altria Group, Inc. v. Good,* —— U.S. ——, ——, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008)).

¶ 5 "Invariably, the critical question in any preemption analysis is whether Congress intended that the federal enactment supersede state law." *Krentz, supra.* This precept was recently repeated and emphasized in *Wyeth v. Levine,* —— U.S. ——, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009), in which the Court identified "the purpose of Congress [as] the ultimate touchstone in every preemption case," and explained that "[i]n all preemption cases, and particularly in those in which Congress has 'legislated in a field which the states have traditionally occupied' ... we start 'with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* at 1194 (citation omitted).

¶ 6 In its claim that Congress intended to occupy totally the field of regulation regarding locomotives, their parts and equipment, Appellant relies on the Boiler Inspection Act (BIA), 49 U.S.C. § 20701,[3] which, together with the Safety Appliance Acts (SAA), 49 U.S.C. § 20301,

---

were dismissed prior to trial.

**2.** The decedent, a smoker, also reported having had some exposure to asbestos in working with roofing materials and automobile brake shoes.

**3.** The statute is now known as the Locomotive Inspection Act, but is nonetheless referred to as the BIA.

designed to standardize regulation of rail-car safety, and the Federal Employer Liability Act (FELA), 45 U.S.C. §§ 51, *et seq.*, an expansion of railroad workers' ability to seek recourse for on the job injuries, has been held to impose "on interstate railroads an 'absolute and continuing duty' to provide safe equipment," *Urie v. Thompson*, 337 U.S. 163, 188, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (citations omitted). The BIA provides in pertinent part:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and . . .

(3) can withstand every test prescribed by the Secretary under this chapter . . .

49 U.S.C.S. § 20701(1)-(3). The FELA in pertinent part provides:

Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. The FELA "is to be liberally construed in light of its prime purpose, the protection of employees and others by requiring the use of safe equipment." *Lilly v. Grand T.W.R. Co.*, 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411 (1943).

■ ¶ 7 The juridical basis for this appeal is *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926), which concerned "the determination of the scope and effect of the federal [BIA]." *Id.* at 606, 47 S.Ct. 207. There the Court examined certain states' regulation of locomotive equipment,[4] and, while concluding that these were valid exercises of the states' police power and not actually in conflict with federal law, nevertheless found preemption, holding that "the power delegated to the [Interstate Commerce] Commission [[5]] by the [BIA] . . . is a general one. It extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." *Id.* at 611, 47 S.Ct. 207.[6] The Court held that "state legislation is precluded, because the [BIA], as we construe it, was intended to occupy the field." *Id.* at 613, 47 S.Ct. 207. Appellant's primary argument is that the *Napier* ruling definitively and forever precluded state controls in this area as "Congress intended, through its enactment of the BIA, and more specifically its amendments, to preempt the entire field of locomotive equipment and safety," and indeed "has never permitted state regulation in the field of safe railroad equipment." (Appel-

---

**4.** Specifically, Georgia's regulation required an automatic door to the firebox of a locomotive, and Wisconsin's a cab curtain.

**5.** Now the Secretary of Transportation.

**6.** In *Southern R. Co. v. Lunsford*, 297 U.S. 398, 56 S.Ct. 504, 80 L.Ed. 740 (1936), the Court later defined all "part[s] and appurtenances," as "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission." *Id.* at 402, 56 S.Ct. 504.

lant's Brief at 17, 11).[7] However, there is a presumption against preemption, *see Dooner, supra* at 1194 (citing *Altria Group, Inc., supra* ), and Appellant's arguments must be measured against that presumption.

■ ¶ 8 Appellant argues that Appellee's claims are preempted by the BIA pursuant to *Napier* because the case makes clear that Congress intended permanent and complete preemption of the field of locomotive safety. Appellant insists that "FELA, SAA and BIA, taken together, constitute a broad and comprehensive system of federal regulation of the railroads the purpose of which is the safety of the railroad and its employees." (Appellant's Brief at 16), and relies on *Urie, supra,* for affirmation of its theory. There the federal schema provided a remedy for a railroad employee who had contracted silicosis from inhalation of silica dust after thirty years as a fireman in a locomotive; the statute's coverage was found to include occupational disease resulting from the employer's negligence. In this regard Appellant notes that the absence of any specific regulation covering asbestos-containing materials is of no concern, *Napier* having ruled "[t]he fact that the Commission has not seen fit to exercise its authority to the full extent conferred has no bearing upon the construction of the Act delegating the power." *Id.* at 613, 47 S.Ct. 207. However, as *Napier* also explains, preemption analysis turns not on whether federal and state laws are aimed at different and distinct evils, but **whether they operate upon the same object.** *See id.* at 612, 47 S.Ct. 207 (citation omitted) (emphasis added). The basis of the action in *Napier* was determined to be that "[t]he federal and state statutes are directed to the same subject—the equipment of locomotives." *Id.* at 612, 47 S.Ct.

207. That clarity of identification does not exist in this instance. As the trial court found, the locomotives on which Appellee's decedent worked were not in motion, that is, in use, when he repaired them, and the asbestos-containing products he used for the repairs did not qualify as appurtenances, that is, "[p]arts removed from or not yet installed in locomotives." (Trial Ct. Op. at 6) (citation omitted).

¶ 9 In any event, Appellee's position is that *Napier* has been overruled "by *Terminal R. v. Brotherhood of R. Trainmen [Terminal]*, 318 U.S. 1, 63 S.Ct. 420, 87 L.Ed. 571 (1943), by Congress in the 1970 Amendments to the Federal Railroad Safety Act ("FRSA"), [45 U.S.C. § 421, *et seq.*] and by the United States Supreme Court in *Wyeth[, supra.]* " (Appellee's Brief at 5). *Terminal* concerned an Illinois regulation ordering the railroads to supply cabooses for "the health, safety, and comfort of rear switchmen." *Id.* at 3, 63 S.Ct. 420. The Court found, in analyzing the appellant Terminal Association's claim of Congressional occupation of the field by the BIA, the SAA and the Interstate Commerce Act, that in the absence of any requirement or preclusion of cabooses by the Interstate Commerce Commission, "these Acts do not themselves preclude the state order." *Id.* at 4, 63 S.Ct. 420. Appellant attempts to neutralize this conclusion by contending that because a caboose is not a locomotive or a part or appurtenance thereof, (*See* Appellant's Reply Brief at 1–2), Congress "failed to express a clear intent to regulate the area of cabooses . . . Therefore, under federalism principles state law applied . . . [and] the Court did not need to engage in a preemption analysis." (*Id.*). However, if the claim is that the alphabet soup of statutory controls preempts completely the field of railroad

---

7. It should be noted that the trial court makes no mention of *Napier.*

safety, as Appellant maintains, then the identity or otherwise between cabooses and locomotives is irrelevant, as only the BIA is directed specifically at locomotives.

¶ 10 This point appears, most critically, in the decision of the Pennsylvania Supreme Court to which Appellee refers us as the controlling precedent in Pennsylvania, *Norfolk & W.R. Co. v. Pa. P.U.C.*, 489 Pa. 109, 413 A.2d 1037 (1980). In that case, the Court addressed a challenge to a Pennsylvania Utility Commission regulation requiring "locomotives operating in the Commonwealth to be equipped with devices which sanitarily dispose of human waste material." *Id.* at 1039. After the Commonwealth Court, holding that the BIA preempts all state regulation of locomotives, reversed the PUC order, the Pennsylvania Supreme Court reversed on the basis that "[t]he power to regulate local matters relating to health and safety, known as the police power, is traditionally reserved to the states," *id.* at 1041, until and unless action by the Secretary of Transportation preempts "the same subject matter." *Id.* at 1044 (citing Senate Commerce Committee Report, No. 619, 91st Cong., 2d Sess. 8–9 (1970)). When faced with an argument based largely on the BIA, the *Norfolk* Court found that once FRSA had been enacted, the BIA could no longer be interpreted to permit preemption of the entire field of railroad safety. In so holding, the Court relied on section 205 of the FRSA which provides in pertinent part:

(a)(2) A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order of standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to

railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 205. As Appellee notes, in 2007 the 1970 FRSA was amended, in Appellee's reading, "to reiterate its intention not to pre-empt state law in the area of railroad safety." (Appellee's Brief at 8). Although section (a)(2) remains essentially unchanged from the 1970 version cited above, Section (b) Clarification regarding state law causes of action, has been added which reads in pertinent part as follows:

(1) Nothing in this section shall be construed to pre-empt an action under State law seeking damages for personal injury, death, or property damage alleging that a party:

(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters) or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

(B) has failed to comply with its own plan, rule or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

(C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106(b)(1)(A)-(C).

¶ 11 Most noteworthy here is subsection (c) of the statute, which provides:

(c) Jurisdiction. Nothing in this section creates a Federal cause of action of

behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

49 U.S.C. § 20106(C).

¶ 12 Tellingly, the *Norfolk* Court quotes the opinion in *Terminal, supra,* on just such subjects as that before it: "we would hardly be expected to hold that the price of the federal effort to protect the peace and continuity of commerce has been to strike down state sanitary codes, health regulation, factory inspections, and safety provisions for industry and transportation." *Norfolk, supra* at 1043 n. 12 (quoting *Terminal, supra* at 7, 63 S.Ct. 420). We find of particular persuasiveness in this regard our Supreme Court's recent decision in *Dooner, supra.* There, albeit in a different context, the Court held in language germane to the case *sub judice:*

Federal law is generally interstitial in its nature. **It rarely occupies a legal field completely, totally excluding all participation by the legal systems of the states ... [Federal legislation] builds upon legal relationships established by the states, altering or supplanting them only so far as necessary for the special purpose.** Congress acts, in short, against the background of the total corpus juris of the states in much the same way that a state legislature acts against the background of the common law, to govern unless changed by the legislature.

*Id.* at 1197 (citation omitted) (emphasis original). We find that state tort law, especially in strict liability asbestos cases, occupies one of the interstices not covered by Congressional command. As the *Dooner* Court has explained, "[c]onsistent with United States Supreme Court case law, it would be entirely rational for Congress not to preempt common law claims, which—unlike most administrative and legislative regulations—necessarily perform an important remedial role in compensating victims of torts." *Id.* at 1201.

¶ 13 Finally, we note the trial court's conclusion that OSHA regulations apply, thus no federal preemption occurs. As the trial court points out the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 653(b)(4) provides that "[n]othing in this Act shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment." [8] As the trial court notes, "[t]his [statement] illustrates that state legal rights and remedies relating to the workplace, specifically railroad shops, cannot be pre-empted by federal law." (Trial. Ct. Op. at 7).[9]

---

8. Appellant's rejoinder points to the Federal Railroad Administration (FRA)'s Notice of Withdrawal of its Proposed Rulemaking With Respect to Railroad Occupational Health and Safety Standards, Fed. Reg. Vol. 43, No. 50, Mar. 14, 1978, 10583, *et seq.,* in which it noted both the application of OSHA to certain general working conditions, but only those "not rooted in railroad operations nor so closely related to railroad operations as to require regulations by the FRA," *id.* at 10587, and as well enumerated its own areas of jurisdiction: (1) track, railroad and associated devices and structures; (2) equipment; and (3) human factors. *Id.* at 10586. There are also apparently references to the BIA in this regard, and an expression of the FRA's intent to regulate the safety of locomotives "and appurtenances thereto." *Id.* The practical effect of the FRA action is unclear.

9. The decision as to whether the legal rights and remedies related to railroad workshops are or are not preempted resides more appropriately in our Supreme Court to whose attention we strongly recommend it.

¶ 14 Appellant's second issue advances the double claim that the verdict was improper as the jury returned its finding against only three of the nine defendants, and that the trial court compounded the jury's error by denying Appellant's motion for JNOV. The trial court found there was no basis on which to disturb the jury's verdict where the evidence was sufficient to hold liable those against whom the verdict was entered. Further, it found the issue waived as Appellant did not raise it in a timely manner, that is, before the jury was discharged. We see no reason to dispute either of these conclusions.

¶ 15 Judgment affirmed.