Justice Kagan,
concurring.
Like Justice Sotomayor, post, at 640 (opinion concurring in part and dissenting in part), I doubt this Court would decide Napier v. Atlantic Coast Line R. Co., 272 U. S. 605 (1926), in the same way today. The Napier Court concluded that Congress had “manifestfed] the intention to occupy the entire field of regulating locomotive equipment,” based on nothing more than a statute granting regulatory authority over that subject matter to a federal agency. Id., at 611. Under our more recent cases, Congress must do much more to oust all of state law from a field. See, e. g., New York State Dept, of Social Servs. v. Dublino, 413 U. S. 405, 415 (1973) (rejecting preemption even though Congress had enacted a “detailed” and “comprehensive” regulatory scheme). Viewed through the lens of modern preemption law, Napier is an anachronism.
But Napier governs so long as Congress lets it — and that decision provides a straightforward way to determine whether state laws relating to locomotive equipment are pre­empted. According to Napier, the scope of the agency’s power under the Locomotive Inspection Act (LIA) deter­mines the boundaries of the preempted field. See 272 U. S., at 611 (state regulations were preempted because they fell “within the scope of the authority delegated to the Commis­sion”); see also ante, at 631 (the “ ‘broad scope of the author­ity’ ” given to the agency “led to [Napier’s] conclusion”); post, at 646 (“[T]he pre-empted field is congruent with the regu­lated field”). And under that test, none of the state-law claims at issue here can survive.
All of us agree that the petitioners’ defective-design claims are preempted. Napier recognized the federal agency’s del­egated authority over “the design, the construction and the *639 material of every part of the locomotive.” 272 U. S., at 611. In doing so, Napier did not distinguish between “hazards arising from repair and maintenance” of the parts and haz­ards stemming from their “use on the line.” Ante, at 634. The agency thus has authority to regulate the design of loco­motive equipment — like the asbetos-containing brakeshoes here — to prevent either danger. And that fact resolves the preemption question. Because the agency could have banned use of the brakeshoes as designed, the petitioners’ defective-design claims — which would effectively accomplish the identical result — fall within the preempted field.
So too the petitioners’ failure-to-warn claims, and for the same reason. Napier did not specifically address warnings, because the case in no way involved them. But if an agency has the power to prohibit the use of locomotive equipment, it also has the power to condition the use of that equipment on proper warnings. (And that is so, contrary to Justice Sotomayor’s view, see post, at 646-647, n. 3, whether the warning is engraved into the part itself or posted on the workshop wall.) Here, for example, the agency need not have chosen between banning asbestos-containing brakeshoes and leaving them entirely unregulated. It could instead have required a warning about how to handle those brakeshoes safely. If, say, a mask would have protected a worker from risk, then the agency could have demanded a notice to that effect. See, e. g., Law v. General Motors Corp., 114 F. 3d 908, 911 (CA9 1997) (“As for warning requirements, these too are within the scope of the [agency’s] authority”); Scheiding v. General Motors Corp., 22 Cal. 4th 471, 484, 993 P. 2d 996, 1004 (2000) (same).* And because the agency could have re­ *640 quired warnings about the equipment’s use, the petitioners’ failure-to-warn claims, no less than their defective-design claims, are preempted under Napier.
I understand these views to comport with the Court’s opinion in this case, and I accordingly join it in full.

 Justice Sotomayor argues that “preserving petitioners’ failure-to-­warn claims coheres with the LIA’s regulatory regime” because the agency disclaims authority over locomotive repair and maintenance. Post, at 646. But that claim conflates two separate distinctions. The agency draws a line not between mandating design changes and mandat­ing warnings, but between regulating equipment that is hazardous to re­ *640 pair and regulating equipment that is hazardous to use on the railroad line. In keeping with that analysis, the agency contends that the petition­ers’ design-defect claims also fall outside the preempted field because the alleged defect in the brakeshoes rendered dangerous only their repair, and not their on-line use. See Brief for United States as Amicus Curiae 12-13. The agency’s understanding of its authority therefore does not support Justice Sotomayor’s position. As the agency agrees, the peti­tioners’ claims must stand or fall together if viewed through the lens of the agency’s regulatory authority. In my view, they fall because the Court rightly rejects the agency’s proffered distinction between regulat­ing the dangers of repairing equipment and regulating the dangers of using that equipment on line. See supra, at 638-639.