PER CURIAM.
Petitioners, Quest Diagnostics, Inc. (QDI) and Quest Diagnostics Clinical Laboratories, Inc. (QDCL), seek certiorari or prohibition relief following a trial court order granting respondent Jeffrey R. Swa-ters’s (Swaters) motion to compel production of his urine specimen. For the reasons below, we grant the petition as one seeking a writ of certiorari, quash the order and return the case to the trial court for further proceedings.
Swaters was employed as a commercial airline pilot with Spirit Airlines. In 2007, he was selected by his employer to submit to random drug and alcohol testing. He *637 was directed to appear at Occupational Health Care of Florida, Inc., d/b/a Concen-tra Medical Centers (Concentra) for urine testing. The urine specimen was sent to QDI. In February, 2007, an employee of QDI took the specimen to Atlanta, Georgia for analysis. It tested positive for controlled substances. Swaters denied using drugs and requested a “split sample” of his urine specimen to be submitted for testing at another facility. It was sent by Quest to Diagnostic Services, Inc. (DSI). DSI reported the same results as Quest had.
After administrative hearings, an administrative law judge made findings which led to the revocation of Swaters’ pilot license. He appealed, but the National Transportation Safety Board (NTSB) affirmed. He appealed its decision to the Eleventh Circuit Court of Appeals, which upheld the Board’s decision. Swaters v. Osmus, 568 F.3d 1315 (11th Cir.2009).
Swaters filed a Florida state law negligence lawsuit against Concentra in February 2010, alleging that Concentra was negligent in the manner it collected the urine specimen. Neither QDI nor QDCL is a party in that lawsuit. QDI is a foreign corporation incorporated in Delaware with its principal place of business in Madison, New Jersey. QDCL, a wholly-owned subsidiary of QDI, is a foreign corporation incorporated in Delaware with its principal place of business in New Jersey as well.
According to petitioners, QDCL’s Georgia laboratory tested Bottle A of Swaters’s urine specimen and it possesses the remaining portion of that specimen. Swa-ters seeks this bottle for DNA testing. He served a subpoena on QDI seeking the urine specimen, by serving its resident agent in Tallahassee. He also served a subpoena on QDCL by serving its registered agent.
QDI responded by a letter from counsel stating that Swaters had served the wrong entity and that QDI did not possess the specimen. Also, QDI advised that its subsidiary QDCL could not release the specimen it had without written consent from the Department of Transportation (DOT). Petitioners allege that QDI contacted the DOT about Swaters’ request and the DOT responded that it would not consent to release of the specimen. As well, QDI said in its letter that the Florida subpoena was not properly served on it. In order to obtain subpoena power over QDCL, Swa-ters would need to domesticate his Florida subpoena in a Georgia court and then serve that subpoena on QDCL at its Georgia location.
Swaters moved to compel production from the two non-parties. QDI and QDCL filed a response in court, this time arguing that Swaters had not obtained jurisdiction over either corporation because neither was subject to Florida subpoena power or the Florida long-arm statute. They also argued that Swaters’ request violated and was preempted by federal law, particularly the Federal Omnibus Transportation Employee Testing Act (FOTETA) and DOT regulations. Finally, they argued that QDI, parent company of QDCL, did not even have possession or control of the urine specimen. The trial court heard argument on the motion to compel and granted it in the order now on review.
Certiorari[1] ordinarily is the extraordinary writ available to challenge an order compelling discovery if the petitioners can demonstrate a departure from the essential requirements of law resulting in material harm of an irreparable nature. See generally Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996); see also *638 McEnany v. Ryan, 44 So.3d 245 (Fla. 4th DCA 2010). The order on review compels production by non-parties in this cause, such that ■ there is no adequate remedy available to them by appeal. This leaves the question of whether the trial court order constitutes a departure from the essential requirements of law resulting in material harm. We find that it does for the reasons below.
The order compels the production of a urine specimen which is protected from production absent DOT authorization under several sections of the Code of Federal Regulations. 49 CFR § 40.13(c) provides:
(c) Except as provided in paragraph (d) of this section, you must not perform any tests on DOT urine or breath specimens other than those specifically authorized by this part or DOT agency regulations. For example, you may not test a DOT urine specimen for additional drugs, and a laboratory is prohibited from making a DOT urine specimen available for a DNA test or other types of specimen identity testing.
Paragraph (d), cited as the exception above, provides:
(d) The single exception to paragraph (c) of this section is when a DOT drug test collection is conducted as part of a physical examination required by DOT agency regulations. It is permissible to conduct required medical tests related to this physical examination (e.g., for glucosé) on any urine remaining in the colléction container after the drug test urine specimens have been sealed into the specimen bottles.
49 CFR § 40.331(f) provides:
§ 40.331 To what additional parties must employers and service agents release information?
As an employer or service agent you must release information under the following circumstances:
[[Image here]]
(f) Except as otherwise provided in this part, as a laboratory you must’ not release or provide a specimen or a part of a specimen to a requesting party, without first obtaining written consent from ODAPC. If a party seeks a court order directing you to release a specimen or part of a specimen contrary to any provision of this part, you must take necessary legal steps to contest the issuance of the order (e.g., seek to quash a subpoena, citing the requirements of § 40.13). This part does not require you to disobey a court order, however.
ODAPC is the DOT’S Office of Drug and Alcohol Policy & Compliance.
As well, 49 CFR § 40.81(c) and (d) provide:
§ 40.81 What laboratories may be used for DOT drug testing?
[[Image here]]
(c) As a laboratory participating in the DOT drug testing program, you must comply with the requirements of this part. You must also comply with all applicable requirements of HHS in testing DOT specimens, whether or not the HHS requirements are explicitly stated in this part.
(d) If DOT determines that you are in noncompliance with this part, you could be subject to PIE proceedings under Subpart R of this part. If the Department issues a PIE with respect to you, you are ineligible to participate in the DOT drug testing program even if you continue to meet the requirements of paragraph (a) or (b) of this section.
Swaters argues that a state law negligence claim is not preempted by federal regulations, but that is not the issue. The issue for the trial court here was whether QDI and QDCL can be ordered to produce the urine specimen to Swaters for DNA testing in the pending state law negligence *639 case when the federal regulations prohibit it absent DOT authorization.
Swaters argues that to interpret the regulations to allow the restriction to remain in perpetuity would be inconsistent with the purpose and intent of the regulations, which is to provide a uniform system for drug testing transportation employees. For support, Swaters cites 49 CFR § 40.99, which provides:
§ 40.99 How long does the laboratory retain specimens after testing?
(a) As a laboratory testing the primary specimen, you must retain a specimen that was reported with positive, adulterated, substituted, or invalid results for a minimum of one year.
(b) You must keep such a specimen in secure, long-term, frozen storage in accordance with HHS requirements.
(c) Within the one-year period, the MRO, the employee, the employer, or a DOT agency may request in writing that you retain a specimen for an additional period of time (e.g., for the purpose of preserving evidence for litigation or a safety investigation). If you receive such a request, you must comply with it. If you do not receive such a request, you may discard the specimen at the end of the year.
(d) If you have not sent the split specimen to another laboratory for testing, you must retain the split specimen for an employee’s test for the same period of time that you retain the primary specimen and under the same storage conditions.
(e) As the laboratory testing the split specimen, you must meet the requirements of paragraphs (a) through (d) of this section with respect to the split specimen.
Swaters argues that this section entitles him to obtain the urine specimen because subsection (c) requires the tester to retain the specimen “for the purpose of preserving evidence for litigation” or other purposes. However, reading this section in para materia with the previous CFR sections does not overcome the requirement that the DOT consent to the release of the urine specimen by the lab. Swaters is not disputing petitioners’ assertion that this request for consent was denied.
We also conclude that Swaters’s attempted service of the subpoenas by service on petitioners’ registered agents was improper. Swaters argues that the subpoenas were properly served on petitioners, as they are foreign corporations which actively do business in Florida, are registered under Florida statutes to do business in Florida and have designated a resident agent for service on them. He cites for support General Motors Corp. v. State, 357 So.2d 1045, 1047 (Fla. 3d DCA 1978), but in that case the third district found that the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings did not apply where a subpoena sought production of documents only. See also CMI, Inc. v. Landrum, 64 So.3d 693, 695 (Fla. 2d DCA 2010), rev. denied, 54 So.3d 973 (Fla.2011); State v. Bastos, 985 So.2d 37, 39 (Fla. 3d DCA 2008). That would be the case here.
Here, even if this Uniform Law for criminal proceedings controlled this civil case, it would be inapplicable under this case law since the subpoenas sought production of a urine specimen only, not testimony of any witnesses.
In CMI, Inc. v. Ulloa, 73 So.3d 787 (Fla. 5th DCA 2011), rev. granted, No. SC11-2291, 2012 WL 1536796 (Fla. May 2, 2012), the fifth district held that the requirements of the Uniform Law applied to defendants in DUI prosecutions who sought to compel an out-of-state manufacturer to disclose a computer source code by serving *640 a subpoena duces tecum on the manufacturer’s registered agent in Florida. The latter holding led the court to certify conflict with General Motors and Landrum. If this issue had to be resolved by application of this uniform law, it is thus apparent that the law is unsettled and before the Supreme Court of Florida.
We do not believe that this issue must be resolved by application of that authority, though, as this is not a criminal case or one relating to a criminal investigation or other proceeding. Florida and Georgia, among other states, have adopted uniform foreign depositions laws. In Florida, the Uniform Foreign Depositions Law (UFDL) is codified in section 92.251, Florida Statutes. Georgia has adopted the Uniform Foreign Depositions Act. O.C.G.A. §§ 24-10-110 to 112 (West 2011). It has been amended by 2012 Georgia Laws Act 643 (H.B. 46), amending Title 24 of the Official. Code of Georgia Annotated, but not all of the amendments appear to have taken effect at this time. The Georgia Civil Practice Act provides for subpoenas for deposition only, although a document request can be included. Georgia requires appointment of a commission and presentation of the commission to the clerk where the witnesses or documents are located before the subpoena can be issued. Rebecca B. Phalen, Obtaining Out-of-State Evidence for State Court Civil Litigation: Where to Start?, 17 Ga. Bar J., No. 2, 18 (Oct. 2011). For Swaters to subpoena records from petitioners, he would have to comply with the controlling provisions of those Georgia statutes. He has not done so.
Finally, we agree with petitioners that the trial court departed from the essential requirements of law insofar as it compelled QDI to produce the urine specimen sought by Swaters as QDI has advised that it does not possess it. We reject without further discussion respondent’s other arguments.

Petition Granted; Order Quashed; Cause returned to the trial court for proceedings consistent with this opinion.

GROSS, HAZOURI and CONNER, JJ., concur.

. We decline to entertain this challenge as a petition for writ of prohibition in the altema-tive, as petitioners suggest.