# Swope v. CBS Corporation

450

*Robert E. Paul*, for plaintiff

*William A. Jones*, for defendant Cantex Corporation

*Lisa Beth Flickstein*, for defendant SOS Products Company

*Dawn Dezii* and *Jeanine D. Clark*, for defendant BF Goodrich Company

*Mitchell S. Pinsly*, for defendant Old Orchard Industrial Corporation

*Stewart R. Singer*, for defendant Metropolitan Life Insurance Co.

*Sandy Gropper*, for defendant Kentile Floors

*John P. McShea*, for defendants General Electric Company and CBS Corporation (formerly Westinghouse Electric Corporation)

*Paul F. Lantieri* and *David A. Damico*, for defendant USX Corporation

*Jacqueline M. Carolan*, for defendant GATX

*Mark A. Lockett*, for defendant Railroad Friction

Products Corporation

*Daniel J. Ryan, Jr.,* for defendants Kaiser Gypsum Company and Trane US Inc. f/k/a American Standard Inc.

*Daniel T. Fitch,* for defendant Griffin Wheel Co. n/k/a Amsted Rail Company.

*John C. McMeekin,* for defendant ACF Industries.

*John J. Dugan,* for defendant Universal Refractories, Division of Theim Corp.

*Basil A. Disipio,* for defendant Minnesota Mining and Manufacturing

*R. Thomas McLaughlin,* for defendant Riley Stoker Corporation

*Michael J. Stack Jr.* and *Peter V. Marks, Sr.,* for defendant Crown Cork and Seal Company

*Michael L. Turner,* for defendant Goulds Pumps Inc.

*Tiffany J. Giangiulio* and *Robert P Corbin,* for defendant Union Tank Car Company

*Timothy D. Rau,* for defendant Clark Equipment Company, a Division of Ingersoll Rand

*Patrick J. Sweeney,* for defendant Walworth Company

*Michael J. Block* and *Barbara J. Buba,* for defendant Certain Teed Corporation

*Christopher N. Santoro,* for defendants Airco Welders Supply and Hobart Brothers Company

*Alyson M. Sciacca* and *Mark G. Lionetti,* for defendant Keeler Dorr Oliver, Inc. Edward T. Finch

*William R. Adams, William J. Smith* and *Tiffany F. Turner,* for defendant John Crane Inc.

*Norman L. Haase,* for defendants Resco Holding LLC

*M. Douglas Eisler,* for defendant Goodyear Tire and Rubber Co.

*Joseph Cagnoli* and *Douglas J. Gush,* for defendant Weil McLain, a Division of The Marley Company

*Barbara J. Buba*, for defendant DAP Inc.

*John A. Turlik*, for defendant BW/LP Inc.

*G. Daniel Bruch*, for defendants Crane Co., Thyssen Krupp Budd f/k/a The Budd Company, Compudyne Corp, Federal Mogul Asbestos Personal Injury Trust

*Christopher N. Santoro*, for defendant Lincoln Electric & Welding Co.

*Thomas J. Bradley*, for defendant Railtech Matweld Inc.

NEW, *J.*, April 25, 3013—Plaintiff, Daniel L. Swope, appeals the November 21, 2012 orders granting summary judgment in favor of defendants CBS Corporation (formerly Westinghouse Electric Corporation) ("CBS/Westinghouse"), GATX, Pneumo Abex, LLC ("Abex"), and Railroad Friction Products Corporation ("RFP") (collectively, "defendant-appellees"), based on federal preemption. As discussed herein below, the orders should be affirmed since plaintiff's claims are federally preempted by the Locomotive Inspection Act (LIA), 49 U.S.C.S. §§ 20701 et seq., as interpreted in *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. ____, 132 S. Ct. 1261 (2012).

## I. FACTS AND PROCEDURAL POSTURE

Plaintiff commenced suit against several defendants on July 28, 2010, alleging he contracted lung cancer as a result of his exposure to various asbestos-containing products throughout his career as a trackman and welder at CBX Transportation, a cargo railroad company. (Pl.'s complaint ¶¶ 6, 10, 11) Plaintiff's claims include allegations he was exposed to asbestos fibers shed from locomotive brake

products and insulation products manufactured and distributed by defendant-appellees.

Specifically, plaintiff alleges he was exposed to asbestos dust from brakes, motors, and door panels applied to locomotive engines designed and manufactured by defendant-appellee CBS/Westinghouse. (Pl.'s answer to CBS/Westinghouse's mot. for sum. j., p. 3) Plaintiff's claims against defendant-appellees GATX, Abex, and RFP relate to plaintiff and his coworkers' use of allegedly asbestos-containing brake products to perform brake changes on locomotives at CBX Transportation. (Pl.'s answer to GATX's mot. for sum. j. Based on *Eckenrod*, p. 2; pl.'s answer to Abex's mot. for sum. j. Based on *Eckenrod* p. 2; pl.'s answer to RFP's mot. for sum. j. Based on *Eckenrod*, p. 2 (collectively attached as exhibit A))

On September 11, 2012, all defendant-appellees filed motions for summary judgment arguing plaintiff's claims against them are federally preempted by the LIA and the Supreme Court of the United States' decision in *Kurns*, 132 S. Ct. 1261.[1] Defendant-appellee Abex also postulates the Safety Appliance Act (SAA), 49 U.S.C.S. §§ 20301-20306, provides an additional basis for preemption of plaintiff's claims. (Abex's mot. for sum. j., p. 1-5)

All of plaintiff's answers to defendant-appellees' motions are virtually the same, word-for-word. Plaintiff

---

1. Prior to the filing of defendant-appellees motions in this case, this court considered the issue of LIA preemption, following *Kurns*, in the case of *Joe R. Perry and Marlene Perry v. General Electric, et al.* (October Term 2010 No. 1927), where the plaintiff alleged exposure to asbestos-containing brakes which he applied to General Electric locomotives. After hearing oral argument, this court ruled, by order dated May 31, 2012, that *Kurns* preempted the plaintiff's claims.

argues his claims are not preempted by the LIA for two (2) reasons. First, plaintiff argues the LIA and *Kurns* only apply to claims for injuries caused by "parts and appurtenances of locomotives." (Pl.'s answer to Abex's mot. for sum. j., p. 1-2) Second, plaintiff claims the LIA cannot preempt his claims in light of the Federal Railroad Safety Act (FRSA) of 1970, 49 U.S.C.S. § 20102 et seq. (Pl.'s answer to Abex's mot. for sum. j., p. 4-5)

Additionally, apparently in response to defendant-appellee Abex's SAA argument, plaintiff argues, in all of his answers, the SAA does not preempt his claims. (Pl.'s answer to Abex's mot. for sum. j., p. 2-4)

Plaintiff concludes by urging his case could provide the Supreme Court of the United States an opportunity to abandon the doctrine of implied field preemption in favor of what plaintiff refers to as the "express preemption" analysis adopted in *Wyeth v. Levine*, 555 U.S. 555 (2009). (Pl.'s answer to Abex's mot. for sum. j., p. 5-7)

On November 21, 2012, we granted all defendant-appellees' motions based on federal preemption. Plaintiff filed a notice of appeal of the orders on december 18, 2012.

## II. DISCUSSION

The orders granting summary judgment should be affirmed since plaintiff's claims are federally preempted by the LIA.

Federal preemption of state law occurs through the operation of the Supremacy Clause of Article VI of the

United States Constitution, which provides federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Preemption may be express, i.e. by congressional provision, or it may be implied in one of two ways. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). First, the doctrine of "conflict preemption" provides state law is preempted to the extent it conflicts with federal law. *Id.* The second type of implied preemption, "field preemption," occurs where Congress intends a federal law to occupy an entire field. *Id.*

The federal law at issue in this case, the LIA, provides, in pertinent part:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—

(1) are in proper condition and safe to operate without unnecessary danger of personal injury

49 U.S.C.S. § 20701.

The Supreme Court of the United States considered the LIA's preemptive scope and effect in *Napier v. Atl. Coast Line R.R. Co.*, 272 U.S. 605 (1926). The court found the LIA confers broad regulatory power upon the Interstate Commerce Commission (ICC), the agency vested with the authority to carry out the LIA's requirements. *Id.* at 611-13. Only the ICC may regulate "the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." *Id.* at 611. Stated simply,

under the doctrine of field preemption, the LIA preempts any state law or regulation pertaining to the fitness of locomotive equipment. *Id.* at 611.

Of particular relevance to plaintiff's case, the Supreme Court of the United States recently held the LIA's preemptive scope, as defined in *Napier*, extends to state law tort claims based on the manufacture and distribution of asbestos-containing products used in locomotive repair and maintenance. *Kurns*, 132 S. Ct. 1261. The *Kurns* plaintiff-petitioners (husband and wife)[2] originally filed suit in the Philadelphia Court of Common Pleas. *Id.* They asserted state law tort claims based on the defendant-respondents' alleged manufacture and sale of asbestos-containing engine valves and brake shoes, which the plaintiff-petitioner husband allegedly applied to and removed from locomotive engines at the Chicago, Milwaukee, St. Paul & Pacific Railroad. *Id.* at 1264-65. The defendant-respondents removed the case to the Eastern District of Pennsylvania and moved for summary judgment based on federal preemption. *Id.* at 1265. The district court granted summary judgment. *Kurns v. Chesterton*, 2009 U.S. Dist. LEXIS 7757 (E.D. Pa. Feb. 3, 2009). The Court of Appeals for the Third Circuit affirmed on appeal. *Kurns v. A.W. Chesterton, Inc.*, 620 F.3d 392 (3d Cir. Pa. 2010). The Supreme Court of the United States granted certiorari. *Kurns v. R.R. Friction Prods. Corp.*, 131 S. Ct. 2959 (2011).

The plaintiff-petitioners asked the Supreme Court to

---

2. The plaintiff-petitioners in *Kurns* were represented by the same counsel presently representing plaintiff.

find their claims were outside the LIA's preempted field, as defined by *Napier*, since none of their claims related to "on the road injuries," and their failure to warn claims, in particular, did not relate to locomotive "design." *Kurns*, 132 S. Ct. 1261. The Supreme Court rejected the plaintiff-petitioners' arguments. *Id.* The claims were all directed at the same subject matter as the LIA, "the equipment of locomotives"; even the failure to warn claims related to locomotive design and manufacturing considerations. *Id.* Accordingly, the court ruled, whether the plaintiff-petitioner husband was exposed to the allegedly unfit locomotive equipment during repair and maintenance, or while the locomotives were in use on the railroad line, the plaintiff-petitioners' state tort claims were preempted by the LIA. *Id.* at 1267-68.

Turning to the case at bar, defendant-appellees argue plaintiff's claims are preempted by the LIA because plaintiff's claims are similar to if not exactly the claims addressed in *Kurns*.

Plaintiff's claims, like the claims in *Kurns*, are based on the use of asbestos-containing products in the performance of locomotive repairs and maintenance. The claims in *Kurns* related to brake products and engine valves; Mr. Swope's claims relate to brake products, motors, and door panels. In both cases, the alleged asbestos exposures occurred when the products at issue were installed on and/or removed from locomotive engines. Like *Kurns*, liability in this case is premised on the manufacture and distribution of the allegedly asbestos-containing products. Despite these similarities, plaintiff argues his claims are

not preempted.

The crux of plaintiff's first argument is the LIA does not apply since his claims do not pertain to "locomotives" or "parts and appurtenances" of locomotives. State law is only preempted if it regulates the fitness of "locomotives [or] parts and appurtenances thereof." *Napier*, 272 U.S. 605 at 607; *see also, S. Ry. Co. v. Lunsford*, 297 U.S. 398, 402 (1936) ("Whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [ICC], are within the statute.").

Plaintiff would have this court find the LIA does not apply on the basis that neither defendant-appellees' products, nor the actual asbestos dust to which plaintiff was exposed, were parts and/or appurtenances of locomotives at the time(s) of exposure. Plaintiff argues:

> [O]nce the asbestos dust leaves or never reaches the locomotive the asbestos was not an appurtenance when it caused the injury... [W]here the asbestos product was not involved with a locomotive at all the *Kurns* opinion does not affect the claims at all.

(Pl.'s answer to Abex's mot. for sum. j., p. 1)

There is no basis for the court to conclude defendant-appellees' brake products, motors, door panels, and locomotive engines were anything other than locomotives and/or parts and appurtenances of locomotives at the relevant time(s). The *Kurns* court clearly referred to the products in that case as "equipment of locomotives" at the time they were used in locomotive repairs and

maintenance. 132 S. Ct. 1261 at 1268. Significantly, the fact the plaintiff-petitioners' claims were "aimed at the equipment of locomotives," and thus "directed to the same subject as the LIA," was dispositive of the entire case. *Id.* Given the similarities between plaintiff's claims and those at issue in *Kurns*, defendant-appellees' products cannot reasonably be considered anything but locomotive equipment, or in other words, locomotives and parts and appurtenances thereof. To the extent plaintiff alleges defendant-appellees' products were "not involved with a locomotive at all," plaintiff fails to establish any basis in fact. In sum, plaintiff's claims are preempted since they stem from plaintiff's use of products which *Kurns* deemed "locomotive equipment" within the LIA's scope.

We also reject plaintiff's argument his claims are not preempted since the asbestos dust which caused his harm was not a locomotive part or appurtenance.

*Kurns* also precludes plaintiff's argument the FRSA limits the LIA's preemptive effect on his claims. Plaintiff relies on *Atwell v. John Crane, Inc.*, 2009 Pa. Super 246 (2009), where the Superior Court of Pennsylvania interpreted the FRSA's preemption provision, § 20106(b)(1), as an indication the LIA was not intended to preempt state tort law, especially in strict liability asbestos cases. Plaintiff somehow overlooks the fact the Supreme Court of the United States vacated *Atwell* in light of *Kurns*. 132 S. Ct. 1712 (2012). Indeed, the *Kurns* court held, "Because the LIA was already in effect when the FRSA was enacted, we conclude that the FRSA left the LIA, and its pre-emptive scope as defined by *Napier*, intact." 132 S.

Ct. 1261 at 1267. Accordingly, the FRSA does not affect plaintiff's claims.

Having found the LIA preempts plaintiff's state claims, we will not address plaintiff's argument pertaining to the SAA's preemptive effect on the same claims.

Plaintiff's proposal that implied field preemption should be abandoned also fails. Plaintiff urges, "To the extent that lower courts have erred by interpreting *Napier* in its broadest sense, that error can be cured by the abandonment of the doctrine of federal field preemption..." in favor of what plaintiff refers to as the "express preemption" analysis adopted in *Wyeth*, 555 U.S. 555. (Pl.'s answer to Abex's mot. for sum. j., p. 5-6) Plaintiff's argument reflects a misreading of *Wyeth* and a misunderstanding of federal preemption as a whole. The issue in *Wyeth* was one of implied conflict preemption; the court considered whether the state and federal regulations at issue were actually in conflict. 555 U.S. 555. Plaintiff characterizes the *Wyeth* analysis as substitute for the implied field preemption analysis exemplified in Napier and Kurns. Plaintiff claims, under the so-called *Wyeth* approach, the LIA would not preempt his claims. Plaintiff fails to realize the *Wyeth* approach and the implied field preemption approach are part of the same doctrinal scheme; a state regulation will be preempted if it is directed at a field occupied by federal law, or if it conflicts with federal law. *Crosby*, 530 U.S. 363 at 372. The *Wyeth* court approached preemption solely through the lens of implied conflict preemption simply because there was no field preemption issue presented. 555 U.S. 555 at 560. Even if the high

court found plaintiff's claims not preempted under a conflict preemption analysis, plaintiff's state claims are still preempted under a field preemption analysis.

## III. CONCLUSION

For the foregoing reasons, this court respectfully requests that our orders granting summary judgment based on federal preemption and dismissing plaintiff's claims against CBS/Westinghouse, GATX, Abex, and RFP be affirmed.