[Cite as *Moreno v. ODACS, Inc.*, 2014-Ohio-5007.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PETER MORENO, | : | APPEAL NO. C-130810 |
| | | TRIAL NO. A-1303574 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| ODACS, INC., | : | |
| Defendant, | : | |
| and | : | |
| QUEST DIAGNOSTICS INC., | : | |
| Third-Party Fact Witness-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: November 12, 2014

*Droder & Miller Co., LPA, Bradley A. Powell* and *Zachary D. Bahorik*, for Plaintiff-Appellee,

*Perez & Morris, LLC, Robert Nichols, Caldwell Everson PLLC* and *D. Faye Caldwell*, for Third-Party Fact Witness-Appellant.

Please note: this case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}   Third-party fact witness Quest Diagnostics, Inc., ("QDI") appeals the trial court's judgment denying its motion to quash plaintiff-appellee Peter Moreno's subpoena seeking the production of his urine sample for DNA testing.   Because federal law preempts the trial court's order in this case, we reverse the trial court's judgment.

{¶2}   Moreno was employed as a school bus driver by First Student in May 2009.  Under the United States Department of Transportation ("DOT") regulations, Moreno was subject to random drug testing.  In September 2012, Moreno submitted to a random drug test at defendant ODACS, Inc.'s, facility in Cincinnati.  Under DOT regulations, ODACS collected Moreno's urine specimen and split it into two separately sealed tubes.  Moreno wrote his initials on each of the sealed tubes.  Both tubes were sent to LabOne, Inc., a laboratory certified by the United States Department of Health and Human Services ("HHS").  LabOne is a wholly owned subsidiary of QDI.  LabOne reported that Moreno's urine specimen tested positive for cocaine.  Because of this result, Moreno was placed on administrative unpaid leave.  At Moreno's request, LabOne sent the second tube containing Moreno's specimen to another HHS-certified laboratory that also reported a positive result for cocaine.  At this time, Moreno's employer fired him.

{¶3}   Moreno sued ODACS, alleging that the collection facility was negligent in collecting, handling, labeling, and/or transferring the specimen.  He does not contest the validity of the positive results from the drug test, but contends that the specimen collected by ODACS did not contain his urine.  Thus, Moreno requested

QDI to produce Moreno's urine specimen for DNA testing. QDI refused, informing Moreno that federal law prohibited QDI from releasing the specimen for DNA testing absent consent from DOT's Office of Drug and Alcohol Program Compliance ("ODAPC"). ODAPC did not consent to QDI's release of Moreno's urine specimen.

{¶4} Because of QDI's refusal, Moreno filed a subpoena requesting QDI to produce his urine sample for identity testing. QDI moved to quash the subpoena. Following oral arguments on the motion, the trial court denied QDI's motion to quash, and instead ordered QDI to produce the urine specimen for DNA testing. QDI now appeals.

{¶5} In its single assignment of error, QDI contends that the trial court erred in denying QDI's motion to quash the subpoena. Specifically, QDI argues that federal law expressly prohibits QDI from producing a urine specimen for identity testing, and that this federal law preempts the state trial court's order to produce Moreno's urine specimen. For the following reasons, we agree.

{¶6} The Federal Omnibus Transportation Employee Testing Act of 1991 ("FOETA") directed the Secretary of Transportation to promulgate regulations requiring random drug and alcohol testing for transportation workers in safety-sensitive positions. *See* 49 U.S.C. 31306(b)(1)(A); 49 C.F.R. 382.305(a). Therefore, the Federal Motor Carrier Safety Administration, a DOT agency, issued those regulations ("the DOT regulations"), which subjected commercial drivers, including school bus drivers, to random drug tests. *See* 49 C.F.R. 382.101 et seq. The DOT regulations determine who is required to participate in the testing program and how the testing is conducted. 49 C.F.R. 382.105; 49 C.F.R. 40.1. There is no dispute that

3

Moreno was subject to random drug testing conducted according to these federal regulations.

{¶7} Under the Supremacy Clause of the United States Constitution, Congress has the power to preempt state law. *Minton v. Honda of Am. Mfg., Inc.*, 80 Ohio St.3d 62, 68, 684 N.E.2d 648 (1997). Federal preemption of state law can occur in three circumstances: (1) when Congress expressly preempts state law; (2) where there is an actual conflict between federal and state law, or (3) "when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively." *Kurns v. R.R. Friction Prods. Corp.*, ___ U.S. ___, 132 S.Ct. 1261, 1265-1266, 182 L.Ed.2d 116 (2012). Additionally, "pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulations." *In re Miamisburg Train Derailment Litigation*, 68 Ohio St.3d 255, 259, 626 N.E.2d 85 (1994); *see Fidelity Fed. S. & L. Assn. v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

{¶8} In this case, both the statute authorizing the DOT regulations and the DOT regulations themselves contain express preemption language. FOETA states: "A State or local government may not prescribe or continue in effect a law, regulation, standard, or **order** that is inconsistent with regulations prescribed under this section." 49 U.S.C. 31306(g). Similarly, the DOT regulations state that when compliance with both state laws and the federal regulations is not possible, or when the state laws are an "obstacle to the accomplishment and execution of any requirement" in the DOT regulations, the state law must be preempted. 49 C.F.R. 382.109. *See Clanin v. N. Am. Bulk Transp.*, S.D.Ohio No. CR 3-01-488, 2003 U.S.

Dist. LEXIS 4156 (Jan. 22, 2003) (Congress intended the DOT regulations to preempt state law).

{¶9}   Here, the DOT regulations specifically address the legality of Moreno's request for DNA testing on his urine specimen.  The DOT regulations state "you must not perform any tests on DOT urine or breath specimens other than those specifically authorized by this part or DOT agency regulations [and] * * * a laboratory is prohibited from making a DOT urine specimen available for a DNA test or other types of specimen identity testing."  49 C.F.R. 40.13(c).  The regulations also state that if a laboratory is ordered by a court to release a urine specimen contrary to the regulations, the laboratory is required to "take necessary legal steps to contest the issuance of the order (e.g., seek to quash a subpoena, citing the requirements of § 40.13)."  49 C.F.R. 40.331.  The Secretary of Transportation, in discussing the prohibition against producing a urine sample for DNA testing contained in the DOT regulations, specifically instructed a laboratory to state in its motion to quash a subpoena that an order to produce a urine specimen for DNA testing is "contrary to Federal law and subject to Federal pre-emption (under the existing preemption provisions of [the DOT regulations]").  65 Fed.Reg. 79462, 79511.

{¶10}  Based on the foregoing, we hold that the trial court's order, requiring QDI to produce Moreno's urine sample for DNA testing, is preempted by the DOT regulations.   Congress has expressly preempted any state law or order that is inconsistent with the DOT regulations, and the DOT regulations specifically prohibit a laboratory from making a urine sample available for DNA testing absent consent from ODAPC.  Therefore, the trial court erred by denying QDI's motion to quash Moreno's subpoena.   *See Quest Diagnostics, Inc., v. Swaters*, 94 So.3d 635,

(Fla.App.2012) (holding that the trial court erred by ordering a laboratory, which performed DOT drug testing, to produce a urine specimen for identity testing absent the consent of ODAPC, in a negligence action against the laboratory).

{¶11}  Moreno argues that the trial court's order was not expressly preempted by the DOT regulations because QDI was able to properly comply with the DOT regulations as well as the trial court's order.  In support of his argument, Moreno cites to 49 C.F.R. 40.331(f) for the proposition that once a laboratory has moved to quash a subpoena seeking the production of a urine sample for DNA testing, its obligation under the DOT regulations is complete.  Moreno also contends that after QDI had moved to quash the subpoena and the trial court had denied the motion, the DOT regulations then required QDI to produce the urine sample.  We do not interpret 49 C.F.R. 40.331(f) in that way.  49 C.F.R. 40.331(f) states, in response to a court order to produce a urine sample for DNA testing, that "[a laboratory] must take necessary legal steps to contest the issuance of the order. * * * This part does not require you to disobey a court order, however."  The Secretary of the DOT has specifically talked about this last sentence, explaining that it was added simply because the DOT did not intend to make a laboratory subject to a contempt citation after a binding court order had been issued to produce a urine specimen.  65 Fed.Reg. 79462, 79511.  But here QDI is still in the process of taking the "necessary legal steps" to contest the trial court's order to produce the urine specimen for identity testing.  QDI filed a timely appeal, which it had the right to do.  Therefore, QDI is not at a point in these legal proceedings where it can comply with the trial court's order without violating the DOT regulations.

**{¶12}** Because the state court's order in this case is preempted by federal regulations, we sustain QDI's single assignment of error.

**{¶13}** The judgment of the trial court is therefore reversed, and the cause is remanded with instructions to the trial court to quash Moreno's subpoena, and for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**HENDON** and **DEWINE, JJ.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.