[Cite as *Arnold v. Kroger Co.*, 2016-Ohio-190.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHRISTOPHER ARNOLD, | : | APPEAL NO. C-150291 |
| | | TRIAL NO. A-1404763 |
| and | : | |
| | | *O P I N I O N.* |
| KRISTINA ARNOLD, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| THE KROGER CO., | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  January 22, 2016

*Statman, Harris & Eyrich, LLC, Jeffrey P. Harris, Sylvie Derrien* and *Colleen M. Hegge* for Plaintiffs-Appellants,

*Marshall Dennehy Warner* and *Ray C. Freudiger*, and *Venable, LLP, Roger A. Colaizzi* and *Edward P. Boyle*, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}    Plaintiffs-appellants Christopher and Kristina Arnold appeal the judgment of the Hamilton County Court of Common Pleas dismissing their class-action claims against defendant-appellee The Kroger Company ("Kroger") for fraudulent inducement, negligent misrepresentation, breach of express warranties, and violation of the Ohio Deceptive Trade Practices Act and the Ohio Consumer Sales Practices Act. The court dismissed their claims as preempted by the federal Poultry Products Inspection Act ("PPIA"). We affirm.

### *The Arnolds' Claims against Kroger*

{¶2}    The Arnolds purchased chicken labeled under Kroger's Simple Truth brand. These labels included statements that the chicken was "raised in a humane environment" and/or "humanely raised." The Arnolds assert these humane-treatment claims are false and misleading because Kroger's chickens are raised no differently than any other chicken mass produced by its supplier, Perdue. They contend that Kroger had injured Ohio consumers by charging a premium for the Simple Truth brand chicken based on these false and misleading claims.

{¶3}    As a result, the Arnolds filed a class-action complaint on behalf of themselves and all other similarly situated purchasers of the Simple Truth brand chicken.

### *Preemption*

{¶4}    In a single assignment of error, the Arnolds argue that the trial court improperly dismissed their claims as preempted by the PPIA. The Arnolds assert that the trial court erred in dismissing their claims for a variety of reasons. The crux of their arguments is twofold: the labeling requirements under the PPIA (1) only give the United

States Department of Agriculture ("USDA") and Food Safety and Inspection Service ("FSIS") the authority to regulate labeling related to the safety of poultry products for human consumption, not living, on-farm chickens and (2) do not review the meaning of claims regarding the humane treatment of animals.

{¶5}     A judgment granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.  In reviewing whether a motion to dismiss is proper, we accept all factual allegations in the complaint as true. *Id.*

{¶6}     The USDA is empowered by Congress to regulate the quality of meat and poultry products and has the authority to prohibit the misbranding of poultry products. 21 U.S.C. 457(b).  The PPIA prohibits poultry labeling that is "false or misleading in any particular."  21 U.S.C. 458(a)(2) and 453(h)(1).  Further, the FSIS is authorized to bar the sale of poultry products with "any marketing or labeling" that it determines "is false or misleading in any particular."  21 U.S.C. 457(d).

{¶7}     Under the Supremacy Clause of the United States Constitution, Congress has the power to preempt state law.  *Ohio State Bldg. & Constr. Trades Council v. Cuyahoga Cty. Bd. of Commrs.*, 98 Ohio St.3d 214, 2002-Ohio-7213, 781 N.E.2d 951, ¶ 46.  Federal preemption of state law can occur in three circumstances: (1) when Congress expressly preempts state law; (2) where there is an actual conflict between federal and state law, or (3) "when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively." *Kurns v. R.R. Friction Prods. Corp.*, ___ U.S. ___, 132 S.Ct. 1261, 1265-1266, 182 L.Ed.2d 116 (2012).

{¶8}     The trial court held that the PPIA expressly preempts the field of poultry labeling.  Indeed, the Sixth Circuit has held that the terms of the Federal Meat Inspection Act ("FMIA") were not simply minimum standards, but instead, "the Federal

3

Act fixes the sole standards." *Armour & Co. v. Ball*, 468 F.2d 76, 84 (6th Cir.1972) (holding that the FMIA preempted a Michigan law requiring higher ingredient requirements for labeling of sausages). However, "the existence of a private right of action under federal law is antecedent of complete preemption." *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 788 (7th Cir.2002); *e.g., Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 260 (6th Cir.1996). Since the PPIA does not provide a private right of action, it does not command field preemption. *Rogers* at 790.

{¶9} The PPIA expressly preempts states from imposing:

[m]arketing, labeling, packaging, or ingredient requirements (or storage or handling requirements * * * [that] unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under * * * [the PPIA] with respect to articles prepared at any official establishment in accordance with the requirements under this chapter * * *.

21 U.S.C. 467(e). This clause sweeps broadly. *See Natl. Meat Assn. v. Harris*, __ U.S.__, 132 S.Ct. 965, 970, 181 L.Ed.2d 950 (2012) (finding that the nearly identical preemption provision set forth in the FMIA sweeps broadly).

{¶10} On its face, the preemption clause prohibits states from mandating any additional or different labeling requirements. The question is whether it preempts state-law damages actions. Such common-law damages actions are "premised on the existence of a legal duty." *Cipollone v. Liggett Group*, 505 U.S. 504, 522, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone*, the court held that since the language of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. 1331-1340, prohibited any "requirement[s] or prohibition[s]" imposed under state law, the act preempted common-law damages actions. *Id.* The court explained that, while "the common law

4

would not normally require a vendor to use any specific statement on its packages or in its advertisements, it is the essence of the common law to enforce duties that are either affirmative requirements or negative prohibitions." *Id.* Likewise, here, the PPIA prohibits additional or different marketing, labeling, packaging, or ingredient requirements that are "imposed by any State or Territory or the District of Columbia." 21 U.S.C. 467(e). But, while the PPIA preemption clause is effective to preempt claims, it would not bar all. *See Cipollone* at 523 (explaining that cigarette act would preempt some claims, it would not preempt others, such as claims asserting manufacturing defects). Thus, the question here is whether the legal duty upon which each damages action is predicated constitutes an additional or different marketing, labeling, packaging, or ingredient requirement imposed by Ohio. *See Cipollone* at 523. We find that the Arnolds' claims attempt to require additional or different requirements, and thus, are preempted.

{¶11} The Arnolds have not alleged that Kroger violated any federal laws or regulations, nor do they assert that Kroger failed to comply with the poultry labeling requirements set forth in the PPIA. Instead, the Arnolds claim that Kroger's use of the terms "humanely raised" and "humane environment" on its labels was false and/or misleading. The Arnolds have conceded, albeit somewhat indirectly, that the FSIS approved Kroger's labels. As part of this approval, the FSIS determines whether the labels are false or misleading. *See* 21 U.S.C. 457. Therefore, because the preapproval process includes a determination regarding whether the label is false or misleading, and the Arnolds' claims hinge on that very determination, any liability the Arnolds seek to impose based on their state-law claims would attach additional or different terms to Kroger's labeling. *See Kuenzig v. Hormel Foods Corp.*, 505 Fed.Appx. 937, 938-939 (11th Cir.2013). Thus, their claims are expressly preempted by federal law. *See*

*Meaunrit v. ConAgra Foods, Inc.*, N.D.Cal. No. C 09-02220 CRB, 2010 U.S. Dist. LEXIS 73599, *21 (July 20, 2010).

{¶12} Furthermore, the Arnolds argument that their claims are not preempted because the PPIA's review of labels is limited to labels "concerning the dead chicken carcass[es]" with regard to protecting the health and safety of the public, not the living conditions of on-farm chickens, is unpersuasive. The PPIA charges the FSIS with inspecting and approving all poultry labeling in order to prevent the sale of poultry products that are "misbranded." *See* 21 U.S.C. 457. Congress declared that the purpose of the PPIA is to provide for the

> inspection of poultry and poultry products and otherwise regulate the processing and distribution of such articles as hereinafter prescribed to prevent the movement or sale in interstate or foreign commerce of, or the burdening of such commerce by poultry products which are adulterated or misbranded.

21 U.S.C. 452. Under the PPIA, "misbranded" means "any poultry product" where "its labeling is false and misleading in any particular." 21 U.S.C. 453(h)(iii). The statute defines "poultry product" as "any poultry carcass or part thereof." 21 U.S.C. 453(h)(i).

{¶13} The PPIA states that assuring poultry products are "wholesome, not adulterated, and properly marked, labeled, and packaged" is essential to the public interest of protecting the health and welfare of consumers, because the distribution of "unwholesome, adulterated, or misbranded poultry products" is harmful to the public welfare and markets for quality poultry products, and causes "losses to poultry producers and processors of poultry and poultry products, as well as injury to consumers." 21 U.S.C. 451. Further, the FSIS has determined that humane treatment of poultry directly implicates its fitness for human consumption because "under the PPIA,

poultry products are more likely to be adulterated if, among other circumstances, they are produced from birds that have not been treated humanely," which may result in poultry that is "not acceptable for human food." *Treatment of Live Poultry Before Slaughter*, 70 Fed.Reg. 56,624-25 (Sept. 28, 2005).

{¶14} The Arnolds rely heavily on *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111 (N.D.Cal.2010), for support. There, the trial court held that many of the plaintiff's claims were preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"), but their claims that the use of images and other phrases, including the word "wholesome," was deceptive were not preempted. *Id.* However, the FDCA contains a savings clause, and its preemption clause is narrow. *See id.* at 1118; 21 U.S.C. 343-1(a)(4)-(5).

{¶15} We hold that the trial court properly dismissed the Arnolds' complaint for failure to state a claim upon which relief could be granted under Civ.R. 12(B)(6), and we overrule the Arnolds' sole assignment of error.

### *Conclusion*

{¶16} The judgment of the trial court is affirmed.

Judgment affirmed.

**MOCK** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

7